# Mutual Fire Insurance Co. of Chester County *versus* Coatesville Shoe Factory, to the use of Babb.

1. A policy of insurance provided that the risk of property insured should be determined by the rates annexed and if the risk should be increased as contemplated by a by-law annexed, the rates should be evidence of the additional risk. The by-law provided that if the insured devoted any part of the insured building or one located by him near it "to a more hazardous business," the policy should be immediately void. The insured for light introduced gasoline, named as increasing the risk; he afterwards removed it; subsequently the building was burned. *Held*, the policy was not void.

2. In the absence of a stipulation to that effect, the validity of the policy depended on the state of the premises at the time of the loss.

3. *Lighting* with gasoline was not devoting the building to a more hazardous *business*.

[Mutual Fire Ins. Co. *v.* Coatesville Shoe Factory.]

January 21st 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Chester county :* Of July Term 1875, No. 119.

This was an action of covenant on a policy of insurance brought January 4th 1875, by the trustees of the Coatesville Shoe Factory, to the use of Thomas C. Babb, against the Mutual Fire Insurance Company of Chester County.

The policy, dated January 2d 1874, was for insuring $2000 on a stone factory building, a steam-engine to be used therein, situate in Coatesville, described in a survey, &c. The policy stipulated that the by-laws attached to the policy should be considered part of its covenants.

One of the covenants of the policy was:—

"That the risk or hazard of property insured in this policy shall be determined by the rates of premium thereto annexed, and if this risk or hazard of insurance shall be increased, as contemplated by by-law 10th hereto annexed, the said rates of premium shall be taken and received as evidence of the said additional risk, and the parties shall be bound thereby, and not allowed to controvert the same."

The tenth by-law was:—

"If any person having property insured in this company, shall locate another building near the same for the purpose of, or devote any part of the one insured to a more hazardous business, whereby the risk of insurance shall be increased, his, her, or their policy shall be immediately void. But by giving due information to the secretary of the company within twenty days thereafter, it may be renewed on such terms as the executive committee shall deem just and equitable."

Amongst the rates of premiums was the following:—

"One per cent. additional will be charged on all dwellings using an apartment therein for the purpose of smoking meat. And one-half of one per cent. additional on dwellings or other buildings lighted by gas made from petroleum."

The claim was for loss by fire, occurring July 28th 1874, on the property insured in the policy.

The case was tried May 19th 1875, before Butler, P. J.

Babb, the use plaintiff, testified that on the 28th of July 1874, he went into the cellar of the building to have some repairs done to a gas pipe; after he supposed the plumber had disconnected the pipe, he turned off the gas burner and went to turn off the gas at the meter; he struck a match to light the plumber in putting a cap on the disconnected pipe, when an explosion took place; witness was insensible for some time; when he revived the building was on fire in several places; he believed he had turned off the gas at the meter, but was not certain. The witness described in detail

[Mutual Fire Ins. Co. *v.* Coatesville Shoe Factory.]

other circumstances connected with the fire; the character of the building; he testified also as to the extent of the loss.

The testimony of a number of other witnesses of the plaintiffs were to the same effect as Babb's.

The defendants called Babb again. He said that plaintiffs had put up a new building, but had not introduced gas; they put in a Victor Gas Machine between May 1st and June 15th 1874; the tank was fifty feet from the building; they connected the pipe; it was used till about July 18th; the material was gasoline; there were about four barrels in all that went into the tank; it was disconnected and cut off from the building on the 22d or 23d of July; the gas was all gone; plaintiffs made application in the summer to the defendants; no increase was made on account of the gasoline; they ceased using gasoline because there was no more in the tank; the secretary of defendants told witness he did not know what the increased rates would be—when he ascertained he would inform him; witness did not put in the gasoline machine until he thought the defendants were satisfied; he gave the secretary to understand that plaintiffs would pay the increased insurance so soon as informed what it was; asked the secretary frequently if he had ascertained the rate.

The secretary of defendants told Babb that the introduction of gasoline would invalidate the insurance, and that another company who had introduced it were told that their insurance was at an end. He said " the building was all blown to pieces ;" he had examined the building ten or twenty minutes after the explosion and saw no fire then; when the insured increases his insurance, it is always endorsed on the policy.

The defendants gave evidence to show that the explosion and fire arose from the use of gasoline.

The following are points of the defendants with the answers :—

1. The damage to the building having resulted from explosion, the defendants are not liable.

Answer. " We cannot answer this in the affirmative. There is evidence that part of the damage or injury resulted from burning."

2. The risk having been increased by the erection of a new building and the introduction of gasoline gas, the defendants are not liable.

5. The introduction of gasoline gas made the policy void, and it was never afterwards revived.

Answer. " This cannot be affirmed; we cannot say the additional buildings increased the risk—it is for the jury. Nor can we say that the introduction of gasoline of itself relieved the defendants from liability."

7. The plaintiffs cannot recover for the damage resulting from the explosion.

[Mutual Fire Ins. Co. *v.* Coatesville Shoe Factory.]

This point was reserved.

The court charged:—

" The suit, as you have observed, is founded on the policy of insurance, issued by the defendants to the plaintiffs. After exhibiting the policy and proving the injury sustained, the plaintiffs rested their case.

" To this the defendants answer, that the insurance company are not responsible—that the injury was caused by the introduction of gasoline into the building, and that the policy does not cover risk from this source. If it is true, as is charged, that the injury resulted from the introduction of gasoline, the defendants are correct in denying responsibility. The company do not insure against risk arising from the use of gasoline, on the terms charged the plaintiffs. It is considered a more serious risk and is charged for at a higher rate. The policy shows this, and the plaintiffs' acts show that they so understood. They desired to have the risk introduced into their policy, and communicated with the company's secretary about it; but nothing that was done in this respect rendered the company responsible. The risk was not assumed.

" Then, did the injury result from the use of gasoline, as the defendants charge ? Gasoline was introduced into the building in May or June 1874, as the plaintiff (Babb) testifies, and was used there until about the 18th of July following, when the material in the tank was found to be exhausted, as the same witness informs us. On the 22d or 23d of the same month, the connection with the tank (from which the gas had issued) was cut, and the communication with the buildings thus severed in the manner described by the witnesses. On the 28th of the same month the fire and explosion occurred.

" [Was this caused by the gasoline ? The defendants charge that it was ; and under the circumstances shown, the burden is on them to satisfy you that it is so.] * * *

" Now, you will determine from the evidence, bearing in mind the comments of counsel, whether the injury to the building was caused by gasoline. If it was, the plaintiffs cannot recover, and your verdict must be for the defendants ; otherwise, the plaintiffs may recover. In case you find for the plaintiffs, you will assess the damages resulting from the explosion as well as the actual burning, but will state the amount from each separately." * * *

The jury found for the plaintiffs $1218.54 for damages from the explosion, and $20 for damages from burning.

The court afterwards entered judgment on the verdict for the plaintiffs on the reserved point.

The defendants took a writ of error, and assigned for error :—

1. The answer to defendants' first point.

2. The answer to their second and fifth points.

4. The part of the charge in brackets.

[Mutual Fire Ins. Co. v. Coatesville Shoe Factory.]

6. Entering judgment for plaintiffs on the reserved point.

*W. M. Hayes* and *W. Mac Veagh*, for plaintiffs in error.—The law of insurance sustains these propositions, viz. :—

1. When there is no *express* contract in the policy, in relation to increase of risk, and where an increase takes place, the insured cannot recover if the loss has resulted from the increased risk.

2. If there is an express provision in the policy against increasing the risk, or increasing it in a particular manner, and the provision is violated, no recovery can be had on the policy, although the increase in the risk may not have caused the loss: Flanders on Fire Insurance 514, 515.

Whether or not the loss was actually occasioned by the increased risk is entirely outside of the question, and the defendant had a right to defend by simply saying that for a risk of this description they never agreed to become answerable: Merriam v. Middlesex Mutual Fire Ins. Co., 21 Pick. 162; People's Ins. Co. v. Spencer, 3 P. F. Smith 353; Woolmer v. Muilman, 1 W. Black. 427; Jennings v. Chenango County Mut. Ins. Co., 2 Denio 81; 1 Phillips on Ins., ch. ix., sec. 10; Lee v. Howard Fire Ins. Co., 3 Gray 583; Flanders on Fire Ins. 521; Diehl v. Adams County Mutual Ins. Co., 8 P. F. Smith 443. The list must be regarded as determining, by virtue of a written contract of the parties, what should constitute an increased risk, and to leave the question an open one to the jury was error: Lee v. Howard Ins. Co., 2 Gray 583; Harris v. Columbiana County Mut. Ins.. Co., 4 Ohio St. 285; Washington Mut. Ins. Co. v. Mech. & Manufac. Mut. Ins. Co., 5 Id. 450. Where there has been an increased risk taken, not covered by the policy, the burden of the proof is on the insured, to show that the loss did not happen from the increased risk, rather than upon the insurer to show the contrary: Sohier v. Norwich Fire Ins. Co., 11 Allen 336; McLoon v. The Commercial Mut. Ins. Co., 100 Mass. 472; 2 Greenleaf on Evidence, sec. 408. The shock or concussion caused by an explosion is not a risk covered by an insurance against fire: Flanders on Fire Ins. 562, 563; Stanley v. Western Ins. Co., Law Rep. 3 Exch. 71.

*G. F. Smith* and *W. B. Waddell*, for defendants in error.— The explosion was occasioned by the fire, the defendants therefore are liable: Waters v. Ins. Co., 11 Peters 213; Insurance Co. v. Corlies, 21 Wend. 367; Greenwald v. Insurance Co., 3 Phila. Rep. 323; Scripture v. Insurance Co., 10 Cush. 356.

Judgment was entered in the Supreme Court, January 31st 1876,

PER CURIAM.—Under the charge of the learned judge, the jury must have found that the injury from the fire in this case did not

[Mutual Fire Ins. Co. *v.* Coatesville Shoe Factory.]

arise from the introduction and use of gasoline as a means of lighting the building. The injury not having arisen from any increased risk growing out of this cause, the first proposition of the plaintiff in error is disposed of. But it is contended that there are provisions in the policy which forbid such an increase of risk, and therefore that the policy is void, whether the loss resulted from this cause or not; and the complaint is, that the question of an increase of risk was submitted to the jury. If the postulate is admitted, the conclusion certainly is that there was error in not so charging. But there is no clause or provision in the policy which makes it void for a temporary increase of the risk. It is true that lighting the building by gas made from petroleum requires a higher rate of premium, and by another provision in the policy this is evidence of an increase of risk over a building not so lighted, which the assured cannot controvert. But there is no provision that such an increase of risk makes the policy void, *ipso facto*. It undoubtedly renders the policy liable to be avoided if a loss arise from this cause. In the absence of a stipulation to this effect, the validity of the policy necessarily depends on the state of the premises at the time of the loss. But in this case the evidence shows that this mode of lighting had been discontinued some time before the fire, and the verdict establishes that the fire did not result from the gasoline. We must, therefore, find some other clause in the policy to support the position of the plaintiff in error. It is supposed this is found in the tenth by-law. But this by-law applies only to a more hazardous *business* pursued by the assured in the building, whereby the risk is increased. If a means of lighting the building in which the business of the assured is carried on can be deemed the business itself, then the rule covers the case, and the policy was avoided. But this cannot be held to be the meaning of the parties in insisting upon this rule as part of their contract. If asked what business he carried on, for the purpose of determining the hazard, and thereby the premium, the assured would have answered, shoemaking by machinery. If asked what light he used, he would then have answered, gas from petroleum, or as the case might be. The very fact that a different clause is introduced into the policy to provide against lighting by petroleum or its products, evidences that the tenth rule was not supposed to cover the case. *Expressio unius est exclusio alterius.* There is, therefore, no clause which by contract avoids the policy, if the prohibited thing be introduced, so that the case fell back upon the questions submitted by the court to the jury, whose finding shows that no loss resulted from anything forbidden in the policy. We discover no error in the record.        Judgment affirmed.